ESTELLA R. HIEATT v. SUSAN W. SIMPSON ET AL.

DOUBTFUL INTENTION OF TESTATOR CONSTRUED MOST NEARLY ACCORDING TO INTENTION AND PURPOSE OF LAW OF INTESTATE ESTATES.

A testator in his will provided that his homestead farm should go to his wife until his son, William, should become of age and then should go to William for life. After making other bequests, he provided that the residuum of his estate should be divided share and share alike among his children for life, and, on the death of any child leaving a child or children, such share of such child of the testator should go to his child or children in fee. No express disposition was made of the fee of the homestead farm: *Held*, that the shares going in fee to the grandchildren of the testator referred to the shares of the children under the residuary clause and an only child of William took not the whole of the homestead farm in fee but his father's proportion only under the residuary clause, this disposition more nearly approaching the disposition which the law would make in the absence of a will.

[Syllabus approved by the court.]

**W. T. Porter,** for plaintiff.

**Worthington & Strong,** for defendants.

**GIFFEN, J.**

This cause involves the construction of the will of William Hieatt and particularly as it affects the title to his homestead farm containing 167.76 acres. At the time of his decease, the testator owned a large amount of personal and real property other than the homestead farm. The testator died in April, 1866, his widow, four daughters and one son surviving him. The son became of age May 22, 1867, and died April 27, 1904, leaving the plaintiff, his only child, surviving him.

In the first paragraph of the will, the testator expresses an intention to dispose of all of his property. By item one he devises to his wife, in addition to other property, the homestead farm, until his son, William, attains his majority, if she shall so long continue his widow and unmarried. And in case of the death of the son before his majority, then for and during her natural life. By item two he devises the homestead farm to his son, William, for life, in the event that he lives to

Hieatt v. Simpson.

be of age. By item three he bequeaths to each of his daughters the sum of $3,000 to be paid at their majority, or as soon thereafter as his wife may think best.

Item five which must determine the controversy is as follows:

"It is my will and I hereby devise and bequeath that all the rest and residue of my said estate, not hereinbefore disposed of and remaining after the foregoing devises and bequests shall have been satisfied, be divided equally among all my children share and share alike to have and to hold to them and each of them for his or her natural life and no longer. And after the death of any of my children his or her said share shall go to, and become the property of, his or her child or children in fee simple and forever, but if any of my said children shall die without a child or children living at his or her death, then the share hereby devised to any such of my children so dying, shall fall into, and become a part of, the residuum of my said estate and be devised and distributed, as though it had never come to the said child so dying, among my other children for life and afterwards to their issue forever as hereinbefore just directed, as though the devise for life to any such of my children so dying had not been made."

In the other items of the will, no disposition was made of the fee of the farm remaining after the life estate to his wife or his son, and hence the words "rest and residue of my estate" as used in item five must include the fee to the farm unless the devise of a one-fifth share for life to each of his children including his son, William, is repugnant to item second, which gives to his son, William, a life estate in the whole on his attaining his majority. This apparent incongruity presents the only real difficulty in the case.

Plaintiff claims that the farm was already disposed of for life, and as this clause only purports to give a life interest, it refers to property other than the farm, and that William having a life estate in the whole farm, the plaintiff's only child took the fee under the second paragraph of item five, while on the other hand the defendants contend that the "residue in my said estate" includes the fee of the farm, and that each child took a life estate in the one-fifth thereof, and the plaintiff one-fifth in fee simple.

There are several contingencies whereby William may have enjoyed a life estate in one-fifth and not in the whole. Had the widow of the testator remarried before the son, William, attained his majority, and William subsequent to that event and before attaining his majority, died, then he would have come into the enjoyment of a life estate in one-fifth of the farm without in any way conflicting with his estate for life in the

whole at his majority. Again, he may have forfeited his estate for life in the whole by failure to pay the taxes, or the estate may have terminated otherwise before his death. In either event, he would take a life estate in the one-fifth under item five.

In aid of this construction of paragraph one of item five, we think the words "his or her said share" and "the share hereby devised," as used in paragraph two naturally refer to that share devised in paragraph one.

This construction is also in harmony with the apparent intention of the testator to approximate an equal division of his property among his children for life with remainder to his grandchildren, *per stirpes,* and whatever doubt there may be as to the real intention should be resolved in favor of that which comes closer to the disposition which the law would make in the absence of a will.

Our conclusion therefore is, that the plaintiff took under the will an estate in fee in one-fifth of the farm and not the whole.

The demurrers to the answers will be overruled and a decree entered accordingly.

**Jelke** 'and **Swing, JJ.,** concur.